**\*\* FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER \*\***

**Electronically Filed
Supreme Court
SCWC-22-0000349
07-OCT-2024
10:07 AM
Dkt. 25 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

_____

IN THE MATTER OF THE TAX APPEAL OF HAWAIIAN AIRLINES, INC.,
Petitioner/Plaintiff-Appellant,

vs.

DEPARTMENT OF TAXATION,
Respondent/Defendant-Appellee.

_____

SCWC-22-0000349

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000349; CIV. NO. 1CTX-21-0000493)

OCTOBER 7, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction and summary

This is an appeal from a complaint filed in the Tax Appeal
Court for the State of Hawai‘i ("tax court").  The case stems
from a contract between Hawaiian Airlines ("Hawaiian") and

Boeing.  Hawaiian agreed to indemnify Boeing for any taxes Boeing might incur for maintenance supply parts it sold to Hawaiian.  Boeing apparently did not remit Hawai'i general excise taxes ("GET") on its sales of maintenance parts to Hawaiian and others.  The State of Hawai'i Department of Taxation ("the Department") conducted an audit of Boeing for tax years 2013-2018.  Boeing claimed that the GET Aircraft Maintenance Exemption ("exemption") of Hawai'i Revised Statutes ("HRS") § 237-24.9 (2017) applied to its sales of maintenance parts.

A January 2020 inter-office memorandum from the Department's auditor recommended against application of the exemption.  Boeing then shared with the Department a letter it received from Hawaiian explaining why it thought the exemption applied and asked for the auditor's thoughts on the matter.  In a September 24, 2020 email, the auditor indicated disagreement but welcomed further questions.

On May 21, 2021, the Department sent Boeing a letter indicating the audit had been closed.  The letter said, "notices of proposed and final assessment will be mailed under separate cover" and that if Boeing disagreed with the proposed assessment, to refer to the "Taxpayer Bill of Rights," (sometimes "TBOR"), which would also be enclosed.  The notice of proposed assessment (sometimes "NOPA") and TBOR were also mailed that day.

On June 9, 2021, Hawaiian remitted payment of $1,624,482.75, representing its portion of Boeing's GET liability, to be credited on June 17, 2021, along with a letter of protest under HRS § 40-35 (2009).[1]

------

[1]     HRS § 40-35 provides as follows:

> **§ 40-35 Payment to State under protest.**
>     (a) Any disputed portion of moneys representing a claim in favor of the State may be paid under protest to a . . . department . . . with which the claimant has the dispute.  The protest shall be in writing, signed by the person making the payment, or by the person's agent, and shall set forth the grounds of protest.  If any payment, or any portion of any payment, is made under protest, the public accountant to whom the payment is made shall hold that portion of the moneys paid under protest in a trust account in the state treasury for a period of thirty days from the date of payment.
>     (b) Action to recover moneys paid under protest or proceedings to adjust the claim may be commenced by the payer or claimant against the public accountant to whom the payment was made, in a court of competent jurisdiction, within thirty days from the date of payment.  If no suit or proceeding is brought within the thirty-day period, the money paid under protest shall be deposited into the appropriate account in the treasury of the State by the accountant and the amount deposited shall thereupon become a government realization.  Any action to recover payment of taxes under protest shall be commenced in the tax appeal court.
>     (c) If action to recover the money paid under protest or a proceeding to adjust the claim is commenced within the thirty-day period, the amount paid under protest shall, pending final decision of the cause, be deposited by the public accountant into the state treasury, in a fund to be known as the "litigated claims fund", together with subsequent payments or portions thereof, made to the accountant under the same protest.  If judgment is rendered in favor of the claimant, the claimant shall be paid the amount of the judgment out of the litigated claims . . . .  [I]f the claim is for the recovery of taxes paid under protest by the claimant, the rate of interest and the overpayment of taxes shall be refunded in the manner provided in section 231-23(c) and (d). . . .  If judgment is rendered against the claimant, the amount of money paid by the claimant under protest which is in the litigated claims fund shall be deposited into the appropriate account in the treasury of the State and the amount shall become a government realization.
>                                          (continued. . .)

Hawaiian then filed the underlying lawsuit in the tax court on June 10, 2021, alleging jurisdiction under HRS § 40-35, seeking a declaration that GET was not owed based on the exemption, and requesting a refund of its payment.

The Department issued its final assessment on July 26, 2021.

The Department then filed a motion to dismiss the lawsuit, which the tax court granted.[2]  The tax court ruled the inter-office memorandum, the September email between the auditor and Boeing, and the May 2021 letter did not constitute "adverse rulings" or a "final agency decision" creating an "actual dispute" as required for a payment under protest, and that the tax court therefore did not have jurisdiction.  The tax court did not address the NOPA, which was referenced in the complaint and included in the record and arguments.

The tax court based its dismissal on this court's opinion in Grace Business Development Corp. v. Kamikawa, 92 Hawai'i 608, 994 P.2d 540 (2000)("Grace II").[3]  In Grace II, the company had made a payment under protest after receiving notice from the

---

(. . .continued)

(Emphasis added.)

[2]    The Honorable Gary W.B. Chang presided.

[3]    Grace II adopted then Intermediate Court of Appeals Associate Judge Simeon Acoba's dissenting opinion in Grace Business Development Corp. v. Kamikawa, 92 Hawai'i 659, 994 P.2d 591 (App. 1999) ("Grace I").

4

Department that it was commencing an audit. 92 Hawai'i at 610, 994 P.2d at 542. We held "that, in the absence of a formal administrative decision by the Director, Grace's payment under protest did not represent an actual dispute within the meaning of HRS § 40-35." Grace, 92 Hawai'i at 614, 994 P.2d at 546. We stated:

> The requirement of a formal administrative decision, such as a notice of assessment, denial of refund, or an adverse ruling, prior to filing suit under HRS § 40-35 is consistent with HRS § 632-1 (1993), which requires an "actual controversy" in order to confer jurisdiction and provides that "declaratory relief may not be obtained ... in any controversy with respect to taxes." In contrast, permitting Grace to demand that the Director resolve the question whether Grace is entitled to the refund requested by paying under protest before an audit is completed or any formal decision is made, in effect, grants Grace declaratory relief in contravention of HRS § 632-1.

92 Hawai'i at 613, 994 P.2d at 545 (cleaned up).

The Intermediate Court of Appeals ("ICA") affirmed the tax court's dismissal.

On certiorari, Hawaiian argues that: (1) the final assessment cannot be the only evidence of a "final agency decision" supporting tax court jurisdiction; (2) Grace II allowed lower courts to determine whether an official agency communication is an "adverse ruling"; (3) the administrative exhaustion requirement cannot be a hard jurisdictional rule because this court's precedent tolerates some error; and (4) where the Department's own guidance on payments under protest fails to advise taxpayers of the administrative exhaustion

5

requirement, the Department should not be allowed to argue that lack of exhaustion mandates lower court dismissal.

With respect to Hawaiian's first question on certiorari, whether a final assessment is the only evidence of a "final agency decision" supporting tax court jurisdiction, we answer no. Although the inter-office memorandum, the September email between the auditor and Boeing, and the May 2021 letter may not have qualified as final administrative decisions, the NOPA clearly did. In our analysis of the first question, we also address Hawaiian's fourth question on certiorari regarding the Department's confusing guidance.

With respect to Hawaiian's second question on certiorari, Grace II does allow courts to determine whether there was an "actual dispute." By holding that a NOPA constitutes a "formal administrative decision" sufficient to create an "actual dispute" for HRS § 40-35 jurisdiction purposes, we do not preclude courts from recognizing other "formal administrative decisions."

Finally, with respect to Hawaiian's third question on certiorari, that the administrative exhaustion set forth in the language of HRS § 40-35 and in Grace II should be seen as "nonjurisdictional procedural requirements to promote the orderly progress of litigation," Grace II clearly held otherwise. Under the doctrine of stare decisis, we see no

compelling justification to depart from its holding.  See Chung Mi Ahn v. Liberty Mut. Fire Ins. Co., 126 Hawai'i 1, 10, 265 P.3d 470, 479 (2011) (explaining that a court should "not depart from the doctrine of stare decisis without some compelling justification").

In summary, we vacate the tax court's May 16, 2022 orders regarding the summary judgment motions and its final judgment, as well as the ICA's April 18, 2024 judgment on appeal, and we remand to the tax court for further proceedings consistent with this opinion.

## II.  Background

### A.   Factual background

#### 1.   Contract between Hawaiian and Boeing

On or about January 30, 2001, Hawaiian and Boeing entered into a "Customer Services General Terms Agreement Relating to Boeing Aircraft" ("the Contract").  Boeing agreed to supply parts for Hawaiian's fleet of Boeing aircraft and any additional units as required by the Contract.  The Contract also provided that Hawaiian would pay Boeing "the amount of any sales, use, value-added, gross receipts, stamp, excise, transfer, and similar taxes imposed by any domestic or foreign taxing authority arising out of or in connection with the Contract[.]"  The tax indemnity provision states:

> "Taxes" are defined as all taxes, fees, charges or duties and any interest, penalties, fines, or other additions to tax, including, but not limited to, sales, use, value-added, gross receipts, stamp, excise, transfer and similar taxes imposed by any domestic or foreign taxing authority arising out of or in connection with this CSGTA [the Contract] or an Order. Except for U.S. federal and U.S. state income taxes and Washington State business and occupation tax imposed on Boeing, Customer will be responsible for and pay all Taxes.

## 2. Boeing audit

Boeing filed its annual GET returns for tax years 2013-2018, claiming an exemption for its sale of maintenance parts under HRS § 237-24.9, which provides in part:

> (a) This chapter shall not apply to amounts received from the servicing and maintenance of aircraft or from the construction of an aircraft service and maintenance facility in the State.
> (b) As used in this section:
> . . . .
> "Aircraft service and maintenance" means all scheduled and unscheduled tasks performed within an aircraft service and maintenance facility for the inspection, modification, maintenance, and repair of aircraft and related components including engines, hydraulic and electrical systems, and all other components which are an integral part of an aircraft.
> . . . .
> "Maintenance" means the upkeep of aircraft engines, hydraulic and electrical systems, and all other components which are an integral part of an aircraft, but does not include refueling, janitorial services or cleaning, restocking of aircraft and passenger supplies, or loading or unloading of cargo and passenger baggage.

HRS § 237-24.9.

On February 19, 2019, an auditor from the Department informed Boeing that she had been assigned to audit Boeing for all years in which the statute of limitations had not expired. The letter also stated that Boeing would not be allowed to claim the GET exemption for non-qualifying retailing.

8

After Boeing told the Department it was challenging denial of the GET exemption for sale of maintenance parts, it asked Hawaiian to substantiate that its aircraft maintenance facility satisfied HRS § 237-24.9. Hawaiian submitted a letter to Boeing explaining why it thought the exemption applied.[4] In a January 6, 2020 email, Boeing asked the auditor to review Hawaiian's letter, outlining its understanding of facts relevant to the exemption, and asking her to let Boeing know her thoughts and next steps.[5]

On September 24, 2020, Hawaiian sent Boeing a letter further insisting that the exemption applied. On September 25, 2020, Boeing provided the auditor with a copy of Hawaiian's letter and asked for her thoughts. On October 29, 2020, the auditor replied to Boeing's email as follows:

> We disagree with your customer's interpretation of the Exemption in their Letter.
>
> Our position remains the same. Please note the following:

---

[4] Hawaiian services its aircraft in its maintenance facility at the Daniel K. Inouye Honolulu International Airport ("the airport"). Hawaiian has two maintenance hangars at the airport. During the audit period of 2013 to 2018, Hawaiian provided services using Boeing 717 and 767 aircraft. When servicing its Boeing aircraft, Hawaiian occasionally replaces existing, worn, or damaged aircraft parts with new or refurbished parts purchased from Boeing because, if not, Hawaiian might be unable to return the aircraft to service without violating federal law.

[5] According to the auditor's supplemental declaration, she received Hawaiian's letter from Boeing and did not directly communicate with Hawaiian regarding Boeing's tax liability during the Boeing audit. She stated she believed Hawaiian to be Boeing's customer, and nothing in the record indicates that the auditor or the Department were aware that Hawaiian was indemnifying Boeing for a part of Boeing's tax liability (regarding a letter from Hawaiian that Boeing shared with her, she stated "[t]hank you for your email and a letter . . . from your customer").

- Boeing sale of parts alone to your customer does not qualify for the Exemption; the sale is subject to GET at 4% tax rate.
- Boeing sale of parts alone to your customer for use on other airlines' aircraft may be subject to ½% instead of 4% GET. The sale is not an exempt sale, as it may have been misinterpreted.
- A use tax exempt is available if your customer imports the aircraft spare parts for its own use. It is the legislature['s] intent to exclude sales of material, parts, or tools in the Exemption; per Legislature committee reports in 1997 and 1998 when the Exemption was enacted.
- The Exemption is for services provided to a customer not on sales of parts alone to its customers.

During the audit, Boeing asked the auditor for an estimate of the amount of retail sales per audit that resulted from the sale of aircraft parts by Boeing to Hawaiian. Boeing also requested that a sales schedule be produced only for Hawaiian.

In a May 21, 2021 letter from the Director of Taxation, the Department informed Boeing that the audit was closed, summarized what the Department was proposing (including the proposed disallowance of the claims under the exemption), and stated that "the notices of proposed and final assessments will be mailed under separate cover[.]" The letter also said if Boeing disagreed with the proposed assessment, it should refer to the TBOR, which would also be enclosed, for further information.

On May 21, 2021, the auditor emailed Boeing a copy of this letter and the NOPA, along with the summary of sales schedule that Boeing requested.

The NOPA stated:

> **NOTICE OF PROPOSED ASSESSMENT OF GENERAL EXCISE AND/OR USE TAX**
>
> Important Note:  RESPONSE REQUIRED WITHIN 30 DAYS
> An audit examination has been completed in accordance with the provisions of Hawaii Revised Statutes (HRS).  Please review this Notice of Proposed Assessment carefully as it provides detailed information about the assessment and payment due.
>
> . . . .
>
> **What do you need to do?**
> You must take action **within 30 days from the Proposed Assessment Mail Date**:
>
>   - If you **agree** with this Notice of Proposed Assessment, please mail your payment with the Payment Voucher (bottom of page 3 of this letter) to the address printed on the voucher or use Hawaii Tax Online (hitax.hawaii.gov, "Make Payment" under Quick Links).
>   - If you **disagree** with this assessment, send a written response or contact the Preparer indicated below. You may instead appeal in accordance with the Hawaii Taxpayer Bill of Rights (page 2 of this letter). Please reference the Letter ID above when contacting us.
>
> **What happens if you do not take action?**
> If you do not take action within 30 days from the Proposed Assessment Mail Date, a Final Assessment will be mailed to you.

(Emphasis in the original).  Paragraph VI of the TBOR (dated October, 2019), enclosed with the NOPA, read as follows:

> **VI.  Audits and Assessment.**  Taxpayers have a right to a Proposed Notice of Assessment. . . .  A Proposed Notice of Assessment . . . (1) explains the basis for the assessment of taxes, penalties, and interest; (2) informs taxpayers of their right to request clarification or to object to the tax assessment within 30 days from the date the Proposed Notice of Assessment was mailed; and (3) informs taxpayers that the proposed tax assessment will become final after the expiration of 30 days from the mailing of the Proposed Notice of Assessment.  Taxpayers have a right to a Final Notice of Assessment, issued after the expiration of 30 days from the mailing of the Proposed Notice of Assessment, that provides the basis for the tax assessment, and informs the taxpayer of the procedure for appealing the assessment.
>
> Taxpayers have a right to request a meeting with the auditor or collector, their supervisor, or senior

> management to discuss a Proposed or Final Notice of Assessment if they do not agree with the tax assessment.
>
> Taxpayers have a right to request that the Department consider a closing agreement to reduce a Proposed or Final Assessment. Closing agreements are final.

Paragraph VII of the TBOR then discusses "Tax Appeals/Payment Under Protest." After discussing "Tax Appeals," there is a section entitled "Payment Under Protest." The latter says:

> Payment Under Protest: In lieu of filing an appeal, or if an appeal is not filed with the board of review, with the tax appeal court, or with the Administrative Appeals Office within 30 days from the date the Final Notice of Assessment was mailed, the taxpayer may pay the disputed tax assessment under written protest and seek to recover the taxes by filing an action in tax appeal court within 30 days from the date of payment.

(Emphasis added).

Also included with the NOPA and TBOR was an "Assessment Summary" detailing additional GET amounts owed by Boeing for tax years from 2013 to 2018, totaling $1,965,290.57, as well as breakdowns of amounts owed for each tax year. Enclosed with the Department's letter was also an official tax "PAYMENT VOUCHER" that indicated the specific "Amount Due" and directions on how to make the payment by check or online.

Neither Boeing nor Hawaiian appealed the NOPA or contacted the Department to disagree with it. The auditor was under the impression that Boeing would be paying the taxes set forth in the NOPA.

Instead, in a June 8, 2021 letter, Boeing informed Hawaiian that it had received the May 21, 2021 NOPA.  This letter attached the calculation of Hawaiian's share of the GET, totaling $1,624,482.75.  Boeing told Hawaiian:

> Per the provisions of our contract, we are asking Hawaiian Airlines either to pay this amount [$1,624,482.75] to us or remit it to the State of Hawaii directly on our behalf.  If Hawaiian Airlines decides upon the latter, please provide us satisfactory evidence to show that the amount has been remitted to the credit of our General Excise Tax account.

Therefore, on June 9, 2021, Hawaiian submitted payment in Boeing's account on Hawai'i Tax Online,[6] scheduling a payment of $1,624,482.75 to be credited on June 17, 2021.  In a letter dated June 9, 2021 submitted on Hawaiian's Hawai'i Tax Online account, Hawaiian stated:

> Hawaiian Airlines, Inc. (Taxpayer) is remitting the sum of 1,624,482.75 due for Primary Taxpayer's General Excise Tax [Boeing], being part of the tax assessed in the Notice of Proposed Assessment dated May 21, 2021 and identified as Letter L2098932992.
>
> Taxpayer is under a contract with Primary Taxpayer that requires Taxpayer to pay General Excise Tax due on payments under the contract.  This contractual obligation allows Taxpayer to succeed to Primary Taxpayer's appeal rights under HRS section 232-1.  This payment was remitted to the Department via Hawaii Tax Online on June 9, 2021, with confirmation number 1-255-440-128.
>
> This amount is being paid UNDER PROTEST pursuant to HRS Sec. 40-35 because:
>
> > • Taxpayer's payment to Primary Taxpayer, on which the tax being remitted is based, is exempt from General Excise Tax under HRS Sec. 237-24.9.

---

[6]   Hawai'i Tax Online is an online portal where taxpayers may make payments, respond to letters received by the Department, and file returns, among other additional services.  See Hawai'i Tax Online, https://hitax.hawaii.gov/_/[https://perma.cc/5JAK-CAEU].

In a June 22, 2021 email, Boeing informed the Department that two payments should have been posted on its account on June 17, 2021, one by Hawaiian and one by Boeing, and asked that the auditor let them know when the payments were applied so that Boeing could close out its audit file.  The portion Boeing paid represented GET taxes owed for Boeing's sale of retail parts to other customers.  Boeing's portion was not paid under protest.

**B.   Tax court proceedings**

On June 10, 2021, Hawaiian filed the subject complaint in tax court.  Hawaiian claimed the Department wrongly disallowed the exemption.  Hawaiian indicated it succeeded to Boeing's appeal rights as the party contractually required to pay a portion of Boeing's assessed taxes pursuant to HRS § 232-1 (2017).[7]

On June 25, 2021, a "Notice of Corrected Proposed Assessment of General Excise and/or Use Tax for the Relevant Tax Years" was mailed to Boeing to correct Boeing's last known address.  On July 26, 2021, forty-six days after Hawaiian filed

---

[7]    HRS § 232-1 provides:

> Whenever any person is under a contractual obligation to pay a tax assessed against another, the person shall have the same rights of appeal to the taxation board of review, the tax appeal court, and the intermediate appellate court, subject to chapter 602, in the person's own name, as if the tax were assessed against the person.  The person against whom the tax is assessed shall also have a right to appear and be heard on any such application or appeal.

its complaint and thirty-nine days after Hawaiian's payment, the "Notice of Final Assessment of General Excise and/or Use Tax for the Relevant Tax Years" was mailed to Boeing.

1.  **The Department's motion to dismiss or cross motion for summary judgment**

    a.   **The Department's motion**

On December 10, 2021, the Department filed a motion to dismiss, or in the alternative, cross motion for summary judgment ("motion to dismiss").

The Department first cited the ICA's decision in Grace I, 92 Hawai'i 659, 994 P.2d 591, and this court's reversal of that opinion in Grace II, 92 Hawai'i 608, 994 P.2d 540.  The Department cited Judge Acoba's dissent in Grace I discussing HRS § 40-35 and its 1967 amendment "to ensure that only funds relating 'to the issues actually in dispute' may be paid under protest."  92 Hawai'i at 672-73, 994 P.2d at 604-05 (Acoba, J., dissenting) (quoting S. Stand. Com. Rep. No. 542, in 1967 Senate Journal, at 1096).

The Department highlighted Grace II's holding that in the absence of a formal administrative decision by the Department, a payment under protest did not represent an actual dispute within the meaning of HRS § 40-35.  92 Hawai'i at 613, 994 P.2d at 545. The Department argued the NOPA here was not the actual assessment of taxes.  It cited HRS § 237-36 (2017), which

15

provides that "[a]fter the expiration of thirty days from the notification [of the proposed assessment] the department shall assess the gross income or gross proceeds of sales of the taxpayer[.]" The Department asserted that only the final assessment "represents the culmination of an administrative procedure in which a taxpayer is first informed of a proposed assessment and given an opportunity to file an administrative protest before the assessment is finalized[.]" Priceline.com, Inc. v. Dir. of Taxation, 144 Hawai'i 72, 76 n.8, 436 P.3d 1155, 1159 n.8 (2019).

The Department argued that there was no actual dispute because Boeing did not dispute the taxes asserted against it, and because no final assessment was issued at the time Hawaiian made payment or filed its complaint, the case should be dismissed for lack of subject matter jurisdiction.

b.    **Hawaiian's opposition**

Hawaiian filed its opposition to the motion to dismiss on January 27, 2022. Hawaiian pointed out the absence of a dispute between Boeing and the Department was to be expected, as Boeing had a contractual indemnity from Hawaiian. Hawaiian also argued the lack of a final assessment at the time the suit was filed did not defeat the tax court's jurisdiction because the Department had ruled on the issue.

16

Hawaiian highlighted our ruling in Grace II that the tax court has jurisdiction to hear taxpayer appeals from assessments, challenges to taxes paid under protest, and adverse rulings by the Director.  92 Hawaiʻi at 612, 992 P.2d at 544 (emphasis added).  Hawaiian argued the Department ruled on the exemption via its October 29, 2020 email to Boeing rejecting Hawaiian's position and the May 21, 2021 closing letter stating the exemption would not be applied.  Hawaiian pointed out these "rulings" were incorporated into the proposed and final assessments; thus, at the time the suit was filed, there was an active controversy between Hawaiian and the Department.

Hawaiian also indicated that, as Boeing's indemnitor, it did not know of the proposed or final assessments, but it was given a copy of the auditor's October 19, 2020 letter.  Hawaiian accordingly "accepted this ruling as the Department's word on the subject."

Furthermore, Hawaiian argued that although the funds were not actually transferred until a few days after its complaint, the tax court's jurisdiction was not defeated.  HRS § 40-35 only requires that suit be pending within the 30-day period after the payment.  Here, the Department had notice of the suit and knew the amount deposited was in dispute and needed to go into the litigated claims fund.  Hawaiian argued that the case here is unlike that in Captain Andy's Sailing, Inc. v. Department of

17

Land and Natural Resources, 113 Hawai'i 184, 150 P.3d 833 (2006), in which we held that a suit was subject to dismissal when commenced more than 30-days after the disputed payment was made. Here, payment was made contemporaneously with its letter in protest of payment and suit was filed within the 30-day period.

Hawaiian argued dismissal of this case would cause the disputed taxes of over $1.6 million dollars to become a lawful government realization, akin to a severe sanction. Because "the governing statutes do not rob the tax appeal court of the power to hear aggrieved taxpayer petitions from adverse rulings by the Tax Director," Hawaiian contended the tax court had jurisdiction. In re Aloha Motors, Inc., 69 Hawai'i 515, 520, 750 P.2d 81, 84 (1988).

c.    **The Department's reply**

On February 2, 2022, the Department filed its reply brief. It reiterated arguments set forth in its motion. The Department argued the October 29, 2020 email to Boeing, the May 21, 2021 closing letter, and its proposed assessment were not formal administrative decisions because they were part of the administrative procedures necessary to finalize the audit of Boeing. The Department argued the final assessment against Boeing was the formal administrative decision.

In response to Hawaiian's argument that, as indemnitor, it was unaware of the proposed and final assessments, the

18

Department argued Hawaiian had knowledge of the Boeing audit and the proposed assessment, and actively participated in the process. The Department contended there was nothing in the record demonstrating that Hawaiian could not request a copy of the assessments from Boeing or the Department.

### 2. Supplemental briefing on the motion to dismiss

At the first hearing, on February 7, 2022, the tax court invited further briefing on the following issues relating to the Department's motion to dismiss: (1) whether the Director was likely to issue the final assessment after payment was made; and (2) whether there was an "actual dispute" between the Director and Hawaiian at the time of payment of taxes assessed against Boeing.

### a. The Department's supplemental memorandum

On April 21, 2022, the Department filed its supplemental memorandum. It reiterated most of its previous arguments. The Department asserted a final assessment must be issued even if taxes are paid. Final assessments are issued to post the assessed tax liability on the taxpayer's account. If one is not issued, there would be no record of the taxpayer's tax liability to which the payment of taxes can be applied. The Hawai'i TBOR provides that taxpayers have a right to a final notice of assessment, issued thirty days after the mailing of the proposed assessment, providing the basis for the tax assessment and

19

informing the taxpayer of the procedures for appealing the assessment.  The Department received no inquiry from Hawaiian regarding the issuance of the final assessment.

Regarding the October 29, 2020 email, the Department added it was unaware of Hawaiian's contractual obligation to Boeing, as the communications were between the Department and Boeing.  The email expressly asked Boeing to let the auditor know if it had any questions on the matter, and, according to the Department, the auditor would have considered further responses or information had Boeing followed up.  The Department thus asserts, at best, the email was an expression of a "difference[]  of opinion" rather than a "formal administrative decision."

### b.  Hawaiian's supplemental opposition

On April 29, 2022, Hawaiian filed its supplemental opposition.  Hawaiian also reiterated most of its previous arguments.

Hawaiian asserted the Department rendered at least three "rulings" to satisfy the actual controversy requirement of HRS § 40-35.  Hawaiian posited that a "ruling" is a construction of tax laws and that no particular form is required.  Hawaiian also asserted there is no requirement that a ruling be printed on Department letterhead or come from a particular person in the Department and that a "ruling" is not final as the Department reserves the discretion to reconsider final assessments pursuant

to HAR §§ 18-231-3-1.1[8] and -1.2[9] (eff. 2016).  Additionally,

Hawaiian argued that a "ruling" need not be "final," as the tax

---

[8]     HAR § 18-231-3-1.1 governs a request for reconsideration of assessment and provides for the process by which a taxpayer can request the Department to grant reconsideration of such a request.  A request for reconsideration of assessment is purely administrative and the Department has the sole discretion in granting or denying any request.  HAR § 18-231-3-101(b), (c). Any request must be submitted as follows:

> (d) A request for reconsideration of assessment shall be made by the taxpayer in writing to the auditor or tax return examiner listed on the Notice of Final Assessment or Denial Letter.  The request for reconsideration of assessment shall be signed by the taxpayer and shall include:
>> (1) A detailed summary of facts and circumstances that the taxpayer believes would, if taken into consideration, result in a different assessment;
>> (2) A list of documentation, evidence, or other information not previously considered by the department that supports the taxpayer's position under paragraph (1); provided that if the department grants a request for reconsideration of assessment under subsection (g), the taxpayer shall provide all such listed documentation, evidence, or other information within thirty days unless otherwise specified by the department; and
>> (3) An explanation of why the taxpayer did not provide the facts, documentation, evidence, or information under paragraphs (1) and (2) during the audit or before the department issued the Notice of Final Assessment or Denial Letter.

HAR § 18-231-3-1.1(d).  HAR § 18-231-3-1.1(g) provides that the Department must notify a taxpayer about the grant or denial of a request in writing.  If granting such request, the Department must also notify the taxpayer that "reconsideration of assessment does not affect the taxpayer's appeal rights and the taxpayer should take steps to ensure it perfects any appeal rights related to the existing Notice of Final Assessment or Denial Letter."  HAR § 18-231-3-1.1(g)(2).

[9]     HAR § 18-231-3-1.2 (eff. 2016) provides:

> (a) For purposes of this section, "reconsideration of assessment" means the process by which the department reevaluates the results of:
>> (1) A prior audit where tax was assessed and remains unpaid; or
>> (2) A prior denial of a taxpayer's claim of a refund or tax credit.
> (b) Upon granting a request for reconsideration of assessment under section 18-231-3-1.1, the

(continued. . .)

laws provide the Department may revoke or modify its opinions (citing HAR §§ 18-231-19.5-03, 18-231-3-1.1, -1.2).

Hawaiian argued that there were three "rulings" evidencing an "actual dispute" under HRS § 40-35:  (1) the October 29, 2020 email from the auditor to Boeing stating that the exemption did not apply to the sale of parts from Boeing to plaintiff; (2) the January 20, 2020 interoffice memorandum recommending nonapplication of the exemption, signed off by the person within the Department in charge of issuing rulings; and (3) the May 21, 2021 closing letter from the auditor to Boeing, closing the audit and stating that the exemption would not be applied. Hawaiian posited these three "rulings" demonstrated there was "no realistic prospect of further factual development on which the Department's opinion could turn," and thus was the final position of the Department.

Hawaiian also argued that the procedural requirements set forth in Grace II are non-jurisdictional rules to "promote the orderly progress of litigation" and are subject to equitable defenses.  Hawaiian cited Boechler, P.C. v. Commissioner of

(. . .continued)
  department may:
    (1) Request additional substantiation, worksheets, spreadsheets, explanations and other documentation; and
    (2) Amend or rescind existing assessments, issue new assessments, or let existing assessments stand in its sole discretion.

Internal Revenue, 596 U.S. 199 (2022), in which the United States Supreme Court held that the deadline to petition the tax court for review of a collection due process determination was not jurisdictional and subject to equitable tolling. Hawaiian asserted that the Department "views all procedural requirements as jurisdictional," but contends that view is incompatible with Aloha Motors because nonjurisdictional procedural requirements must exist in Hawaiʻi even though Aloha Motors did not say so explicitly. Hawaiian then asserted that the administrative exhaustion requirement in Grace II "must be one such non-jurisdictional procedural requirement" because it is not reflected in HRS § 40-35.

Hawaiian asserted the Department should not be able to argue administrative exhaustion under equitable estoppel principles because its own guidance on payment under protest failed to advise taxpayers accordingly. Neither the TBOR nor Tax Information Release ("TIR") 2002-1,[10] documents the Department provides as guidance for taxpayers, contain administrative exhaustion requirements that must be satisfied before making a payment under protest. Hawaiian also insisted that under the balance of equities principles, where a party

_____

[10] State of Hawaii Department of Taxation, Tax Information Release No. 2002-1, https://files.hawaii.gov/tax/legal/tir/1990_09/tir02-01.pdf [https://perma.cc/XG2L-D2UA].

indemnifies another for tax, the indemnitor would be unaware of a notice of final assessment and should not be required to wait for one where there is no prejudice to the Department.  Under the doctrine of equitable tolling,[11] Hawaiian asserts the equities balance in its favor because there was no reason to believe that Boeing would share the final assessment notice with Hawaiian and the Department would not be prejudiced by allowing this action to reach the merits, while Hawaiian would suffer a $1.6 million loss for the taxes it paid.

### c. The Department's supplemental reply

On May 4, 2022, the Department filed its supplemental reply.  It repeated previous arguments.  The Department also asserted that under HRS § 237-36, it is required to follow a specified process for an assessment, like providing a notice of a proposed assessment and giving taxpayers an opportunity to confer with the Department for at least thirty days before the final assessment.  HRS § 231-17 (2017) provides that notices issued by the Department are deemed to have been given on the date the notice was mailed, properly addressed to the addressee at the addressee's last known address.  The Department argued

---

[11]    Under the doctrine of equitable tolling, we have noted federal law provides that to toll a statute of limitations for a complaint filed after its expiration, a plaintiff must demonstrate:  "(1) that [they] have been pursuing their rights diligently, and (2) that some extraordinary circumstance stood in [their] way."  Office of Hawaiian Affairs v. State, 110 Hawaiʻi 338, 360, 133 P.3d 767, 789 (2006) (citations omitted).

24

that any formal administrative decision must comport with these requirements.

The Department countered that the three documents Hawaiian relied upon were not "rulings" because they were not the actual assessment. The October 29, 2020 email was a part of ongoing communications with Boeing; the January 28, 2021 interoffice memorandum did not specifically identify Boeing or Hawaiian and was used for consultation; and the May 21, 2021 closing letter was to inform Boeing that the audit was closed and summarized what was being proposed. The Department also responded to Hawaiian's argument that the proposed assessment is the guiding assessment because the final assessment is "automatic" based on the default in the computer system; it said an auditor may actually override the automatic issuance of a final assessment, which may be different from a proposed assessment.

The Department also argued that the "actual dispute" requirement in HRS § 40-35 is jurisdictional. Citing the dissent in Grace I, the Department highlighted former Judge Acoba's analysis of HRS § 40-35 and its legislative history, and the conclusion that until the Department actually assesses the taxpayer, the dispute is "not real as of now" as contemplated by HRS § 40-35 and "[i]n the absence of such a dispute, there would be no tax appeal court jurisdiction." 92 Hawai'i at 674, 994 P.2d at 606 (Acoba, J., dissenting). The Department argued that

in Grace II, we dismissed the case for lack of subject matter jurisdiction in accordance with Judge Acoba's dissent because there was no actual dispute. The Department argued that this court has already concluded the legislature intended the actual dispute requirement to be jurisdictional.

The Department responded to Hawaiian's argument that equitable exceptions apply. The Department posited that while it tries to do its best to provide resources that may be helpful, like the TBOR and TIR 2002-1, it cannot be expected to explain all possible legal issues that could arise. It further argued that equitable tolling does not apply because Hawaiian had not met its burden under the equitable tolling standard.

3.    **Tax court's May 9, 2022 hearing**

On May 9, 2022, the tax court held a hearing on Hawaiian's motion for summary judgment and the Department's motion to dismiss. After argument from both parties, the tax court ruled as follows:

> The issue framed by the motions in this case essentially focus upon the subject matter jurisdiction, and that the manner in which this court will address the question. And the issue is raised because the action was filed with some lack of clarity regarding whether the requirements of the statute that []all or a dispute portion of monies representing a claim in favor of the State were paid under protest. That requires a dispute to exist at the time of the payment being made, and whether or not a dispute does or does not exist depends upon the conduct or behavior of the department and the taxpayer.
> And I must say, as an aside, the circumstances of the taxpayer and how it was treated by Boeing is certainly less than optimal. At least in this record it suggests that the plaintiff in this case was kept in the dark for some reason, I don't know why, and Boeing was not as forthcoming

with information as I would hope entities in a complex and very expensive business venture would afford to each other, especially when one is contractually obligated to pay the general excise tax of the other on such a large scale. But be that as it may, and for whatever reason, the parties conducted themselves as they did in this case. And the parties I'm referring to are Boeing and Hawaiian Air. That still does not excuse this court of its obligation to examine whether it does or does not have subject matter jurisdiction over this instant action.

So the principles involved are not complicated. It is applying those principles to the facts that become complicated. The principles upon which this decision exist is that there must be a genuine dispute, an actual dispute between the plaintiff and the Department of Taxation at the time the payment was made. And whether or not there is this actual dispute depends upon whether the plaintiff was acting upon "a formal administrative decision" of the department, and that's where it becomes complicated. Because as the court indicated -- indicated, the record appears to suggest that from beginning to end the department was of the mind that the exemption did not apply. And they may have entertained other considerations but essentially they've stayed true to that position all throughout.

The taxpayer suggests that, yes, a formal administrative decision within the meaning of the *Grace Brothers Development* case is clearly existing and it was embodied in three different writings. Number one was the January 28, 2020 interoffice memorandum that discussed the exemption in question; number two, the October 29, 2020 email that disagreed with the taxpayer's analysis of the exemption issue; and, number three, the May 20, 2021 audit closing letter that brought an end to the audit.

But viewing each one of these documents as carefully as the court could and considering the context in which they arise, this court is not able to find or conclude that any of those three documents constituted a formal administrative decision such that there was an actual dispute at the time the payment in this case was made under protest.

And not to -- to suggest that these comments are comprehensive but, number one, the January 28, 2020 interoffice memorandum is an internal document that was not served upon the taxpayer and it cannot be that a formal administrative decision of the tax department that that is not served upon the taxpayer. To -- to constitute a formal administrative decision on a tax matter the taxpayer must be apprised of that decision. And so that fundamental lacking of the interoffice memorandum not being served upon the taxpayer cannot constitute a, that interoffice memorandum, as a formal administrative decision.

Number two, the October 29, 2020 email, it certainly disagreed with the analysis of the exemption by the taxpayer but it certainly did not speak in terms of a formal administrative decision. It invited further comment. It did not indicate any amounts due and owing.

27

And it -- the form of that writing is an email. And as the court did indicate throughout the hearing, it is the most common form of business communication these days to communicate in a transaction by email. And it simply undermines the credibility of the phrase "formal administrative decision" to suggest that an email in the normal course of business communications would constitute a formal administrative decision that would trigger tax appeal or tax payment, rights, or obligations. It's simply too fluid a method of communication to constitute a formal administrative decision.

And, number three, the May 20, 2021 audit closing letter certainly does not appear to inform the taxpayer of an administrative decision. It has no amounts of taxes in it that are due and owing, and it does not suggest the end but appears to be a step in the middle of the process of tax assessment because that letter specifically says that a proposed and final assessment will follow. So it appears to be yet another step in the continuum of the assessment process.

The court also considered the argument that the statute requires certain formality in concluding the assessment procedure and that is by means of a final assessment under 237-36. The court is not suggesting that a final assessment is the only way that a formal administrative decision can be communicated to the taxpayer. However, it is one of the ways. Chief Justice Moon identified three methods of communicating a formal administrative decision, by way of example, and those would be a notice of assessment, a denial of refund, and an adverse ruling. And none of the three documents that were urged upon the court by the taxpayer, or the plaintiff, as a formal administrative decision constitutes or meets the requirements of due process and the purpose of 40-35.

There must be some order in terms of the business of tax assessment. And while a final assessment as the court indicated is not the only method of triggering tax appeal rights and 40-35 rights, it certainly is one of them and none of the other three that are suggested in this case do constitute that formal administrative decision.

So for these and any other good cause shown in the record the court will respectfully grant the tax department's motion to dismiss or for summary judgment on the basis of this court lacking subject matter jurisdiction. The court is unable to find that there was an actual dispute between the plaintiff and the tax department at the time the subject payment under protest was made. There simply -- the court was not able to find a "formal administrative decision" by the tax department that would trigger the 40-35 rights to make a payment under protest. And therefore the court will also respectfully deny the taxpayer's motion for summary judgment.

The tax court filed its orders on the motions for summary judgment and the final judgment on May 16, 2022.

28

## C.   ICA proceedings

On May 20, 2022, Hawaiian filed its notice of appeal, and on March 15, 2024, the ICA issued its summary disposition order, Hawaiian Airlines, Inc. v. Dept. of Taxation, No. CAAP-22-00349, 2024 WL 1129759 (Haw. App. Mar. 15, 2024) ("SDO").  The ICA held the tax court correctly granted the Department's motion because of our decision in Grace II, and that there must be an "actual dispute" before a taxpayer can make a payment under protest and bring an action under HRS § 40-35.  Hawaiian Airlines, 2024 WL 1129759, at *2.  The ICA also cited this court's statement in Grace II that "where an administrative decision has not been formalized, simply arguing that there is a 'dispute' or 'difference of opinion' with [Tax] Department policy and paying taxes under protest does not present an actual dispute under HRS § 40-35."  Hawaiian Airlines, 2024 WL 1129759, at *2 (quoting 92 Hawai'i at 613, 994 P.2d at 545).  The ICA ruled that because there was no formal decision until the July 26, 2021 notice of final assessment, after Hawaiian had already submitted a payment under protest and filed this action, Hawaiian could not rely on HRS § 40-35 to invoke the tax court's jurisdiction; it affirmed the tax court's ruling.  Hawaiian Airlines, 2024 WL 1129759, at *2.  On April 1, 2024, the ICA issued an order denying Hawaiian's motion for reconsideration.  Hawaiian Airlines, Inc.

29

v. Dept. of Taxation, No. CAAP-22-00349, 2024 WL 1359702 (Haw. App. Apr. 1, 2024).

### D.   Certiorari proceedings

On May 13, 2024, Hawaiian filed its application for writ of certiorari.  Hawaiian presents the following issues:

> 1.  In a payment under protest suit brought under HRS § 40-35 by an indemnitor of a taxpayer under audit, whether the Notice of Final Assessment issued to the taxpayer is the *only* evidence of a final agency decision sufficient to confer jurisdiction on the court below even if the indemnitor is not given notice of said Final Assessment.
>
> 2.  In a payment under protest suit brought under HRS § 40-35 where it is contended that an "adverse ruling" is evidence of final agency decision, whether *any* factual analysis may be engaged in to determine whether a document from an official Department of Taxation . . . representative purporting to apply the tax laws to the indemnitor's and the taxpayer's factual situation and give the agency's answer thereto was a "ruling."
>
> 3.  In a payment under protest suit brought under HRS § 40-35, whether failure to meet the requirement of final agency action is jurisdictional, or is rather a "claim-processing rule," open to exceptions to ensure fundamental fairness and justice, as is suggested by In re Aloha Motors, Inc., 69 Haw. 515, 750 P.2d 81 (1988).
>
> 4.  When the Department in published guidance has notified taxpayers of the requirements of payment under protest review *except for* the requirement of final agency decision, whether the Department may, contrary to that guidance, argue that the suit must be dismissed (and the payment made thereby forfeited to the Department) because no final agency decision has been made.

(Emphasis in the original).

## III. Standard of Review

A trial court's grant or denial of a motion to dismiss for "lack of subject matter jurisdiction is a question of law, reviewable de novo."  Norris v. Hawaiian Airlines, Inc., 74 Haw. 235, 239, 842 P.2d 634, 637 (1992) (cleaned up).  In Norris, we

adopted the view of the Ninth Circuit Court of Appeals in Love v. United States, 871 F.2d 1488, 1491 (9th Cir. 1989), opinion amended on other grounds and superseded by Love v. United States, 915 F.2d 1242 (9th Cir. 1989), that:

> review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Norris, 74 Haw. at 240, 842 P.2d at 637 (cleaned up). "However, when considering a motion to dismiss pursuant to [Hawai'i Rules of Civil Procedure] Rule 12(b)(1) [(2000)] the trial court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." Id. (cleaned up).

## IV. Discussion

### A. A notice of proposed assessment also qualifies as the "formal agency decision" required by Grace II to create an "actual dispute" for HRS § 40-35 jurisdiction purposes

In its first question on certiorari, Hawaiian asks whether a final assessment is the only evidence of a "final agency decision" supporting tax court jurisdiction under HRS § 40-35. We answer no and hold that a notice of proposed assessment also suffices to constitute the "formal agency decision" required by Grace II. This holding is consistent with Grace II as well as

"the common law origins of HRS § 40-35 in equity," as discussed by the majority opinion in Grace I.[12]

Grace I and Grace II involved Grace, a business incorporated under HRS chapter 420, claiming tax exemptions as a business development corporation ("BDC"). Grace II, 92 Hawai'i at 609, 994 P.2d at 541. In 1997, the Director issued TIR 97-5, reflecting a change in the Department's policy regarding BDC tax exemptions aimed at disallowing exemptions for businesses not intended to benefit from chapter 420. Grace II, 92 Hawai'i at 610, 994 P.2d at 542.

Grace then received two letters, one providing notice regarding TIR 97-5 and the effect on Grace's status as a BDC,

_____

[12]    Associate Judge John Lim's majority opinion in Grace I contains an excellent historical analysis of the evolution of Hawai'i law regarding tax disputes. 92 Hawai'i at 664-70, 994 P.2d at 596-602. Although in Grace II we agreed with then ICA Judge Simeon Acoba's dissenting opinion that the requisite "actual dispute" did not exist under the facts of that case, we emphasize the equitable origins of HRS § 40-35, as expounded on by Judge Lim.

In this regard, we take judicial notice of Hawaiian's separate appeal of its HRS chapter 237 refund request case in 1CTX-22-0000983. We express no opinion on the procedural or substantive merits of that case. We note that after the tax appeal court granted the Department's motion to dismiss this case and entered final judgment on May 16, 2022, Hawaiian sent a letter to the Department on May 19, 2022, requesting a refund of its payment. When no response was received, Hawaiian filed an appeal to the tax court on December 8, 2022. On March 5, 2024, the tax court ruled that Hawaiian's claim was not precluded by the statute of limitations and that it has jurisdiction over that appeal. On July 15, 2024, the tax court entered summary and final judgment in favor of the Department, ruling the aircraft maintenance exemption inapplicable. On July 25, 2024, Hawaiian appealed the ruling regarding inapplicability of the exemption, in CAAP-24-0000496. On August 14, 2024, the Department cross-appealed the tax court's statute of limitations ruling. Hence, the Department seeks to retain Hawaiian's payment not only on substantive grounds but also on procedural grounds, taking the position that Hawaiian's payment was made too soon to invoke HRS § 40-35 jurisdiction yet too late to invoke HRS chapter 237 jurisdiction.

and the other notifying Grace that the Department was commencing an audit of its operations.  Id.  The Department drafted a proposed assessment, but no notice of the assessment was sent to Grace.  Grace II, 92 Hawai'i at 611, 994 P.2d at 543.  In 1998, although the audit had yet to take place, Grace paid the applicable taxes under protest, asserting that because Grace was a BDC, it was not subject to Hawai'i GET or transient accommodations taxes, nor obligated to report its gross income on such returns.  Grace II, 92 Hawai'i at 610, 994 P.2d at 542.  A few days later, Grace filed a complaint in the tax appeal court.  Id.

The tax appeal court dismissed the appeal, ruling it lacked HRS § 40-35 jurisdiction; the ICA reversed.  Grace I, 92 Hawai'i at 660, 994 P.2d at 592.  Then ICA Associate Judge Simeon Acoba stated in dissent:

> [A]s a general matter, subject matter jurisdiction rests in the tax appeal court to hear taxpayer "appeals" from assessments; challenges to taxes paid under protest; and adverse rulings by the tax director.  There being neither an outstanding assessment nor an adverse ruling by [the Tax Director] in the instant case, the question is whether the protest payment by [Grace] satisfies the requirements of HRS § 40-35 so as to invoke subject matter jurisdiction of the tax appeal court.  I am of the opinion that it does not, and therefore would hold that jurisdiction does not lie in the tax appeal court.  I consider the legislative history of HRS § 40-35 as supportive of this conclusion.

Grace I, 92 Hawai'i at 672, 994 P.2d at 604 (Acoba, J., dissenting) (cleaned up).  This dissent discussed the legislative history of HRS § 40-35, which was eventually amended

to prohibit funds not "actually in dispute" from being paid under protest because such funds would be removed from governmental use pending judicial resolution of a controversy. Grace I, 92 Hawai'i at 673-74, 994 P.2d at 605-06 (Acoba, J., dissenting).

On certiorari, this court ruled that "in the absence of a tax assessment, denial of a refund, or other adverse ruling[,] [i]n accord with Associate Judge Acoba's dissenting opinion, we hold that there was no actual dispute within the meaning of HRS § 40-35." See Grace II, 92 Hawai'i at 609, 994 P.2d at 541. We ruled that absent a "formal administrative decision" by the Director, Grace's payment under protest did not represent an actual dispute under HRS § 40-35 and affirmed the tax appeal court's dismissal for lack of subject matter jurisdiction.

We stated that the

> requirement of a formal administrative decision, such as a notice of assessment, denial of refund, or an adverse ruling, prior to filing suit under HRS § 40-35 is consistent with HRS § 632-1 (1993), which requires an "actual controversy" in order to confer jurisdiction and provides that "declaratory relief may not be obtained ... in any controversy with respect to taxes[.]"

92 Hawai'i at 613, 994 P.2d at 545. We concluded that "[t]he need to avoid premature adjudication supports a definition of 'dispute' that requires more than a 'difference of opinion' as to policy." 92 Hawai'i at 612, 994 P.2d at 544. In order for a

claimant to properly make a payment under protest and bring an action under HRS § 40-35,

> there must be an <u>actual dispute</u> . . . <u>where an administrative decision has not been formalized, simply arguing that there is a "dispute" or "difference of opinion" with Department policy and paying taxes under protest does not present an actual dispute</u>.

<u>Grace II</u>, 92 Hawaiʻi at 613, 994 P.2d at 545 (emphasis added).

In the tax court, Hawaiian specifically argued that HRS § 40-35 jurisdiction existed based on the inter-office memorandum, the September email between the auditor and Boeing, and the May 2021 letter, and the tax court ruled that none of these constituted the requisite formal administrative decision. The tax court did not, however, address the May 21, 2021 NOPA, although it was referenced in the complaint and included in the record. But the issue of subject matter jurisdiction is one of law and the court may consider not just the pleadings, but also the record.

In <u>Grace II</u>, we said that "permitting Grace to demand that the Director resolve the question whether Grace is entitled to the refund requested by paying under protest before an audit is completed or any formal decision is made, in effect grants Grace declaratory relief in contravention of HRS § 632-1." 92 Hawaiʻi at 613, 994 P.2d at 545. Despite the obvious differences with the facts of this case, the Department takes the position that <u>Grace II</u> means Hawaiian's payment could not be made until after

issuance of the <u>final</u> notice of assessment to qualify as a HRS § 40-35 payment under protest. It argues Hawaiian's payment was therefore premature and deprived the tax appeal court of HRS § 40-35 subject matter jurisdiction. It also asserts that Hawaiian had the option of filing an appeal after the final assessment, but missed that deadline.[13] Therefore, the Department takes the position that Hawaiian has no procedural remedy.[14]

We disagree with the Department. Here, we need not decide whether the May 21, 2021 letter could also have constituted the required formal administrative decision because the May 21, 2021 NOPA did, even if it was to be followed by a final assessment. Contrary to the Department's position, <u>Grace II</u> supports this holding. The payment under protest there was made after the Department only gave notice it would be conducting an audit. Here, the audit had been completed. Also, Judge Acoba's dissent in <u>Grace I</u> indicated there was no "actual dispute" because there had been "no demand" and "no determination of tax liability." <u>Grace I</u>, 92 Hawai'i at 674, 994 P.2d at 606. Here, the NOPA

---

[13] It was also pointed out at oral argument, however, that while the State could owe interest of four percent on taxes refunded to taxpayers, taxpayers could owe eight percent interest on amounts due, assessable from the date of the original return. By making its payment under protest when it did, it appears Hawaiian halted the accrual of the eight percent interest earlier than if it had waited for the final assessment, in the event its appeal was eventually denied.

[14] See also supra note 13.

contained a "demand" and a "determination of tax liability." It even contained a payment voucher specifying the amount to pay, instructions on the method in which payment could be made, and to whom the check was to be made payable.

The NOPA was a "formal administrative decision." In this regard, addressing Hawaiian's fourth question on certiorari, we agree that the Department's communications were confusing. The TBOR serves to inform all taxpayers of their most important rights as taxpayers. The rights therein are "based on laws and . . . [the Department's] commitment to administer [Hawai'i's] tax law in a fair and equitable manner." Section VI of the TBOR, quoted above, indicates the NOPA "explains the basis for the assessment of taxes." Although it also refers to a "right to request clarification or to object to the tax assessment within 30 days," it also says that "the proposed tax assessment will become final after the expiration of 30 days from the mailing of the Proposed Notice of Assessment." Moreover, Section VII of the TBOR, quoted above, clearly says that, "in lieu of filing an appeal," a taxpayer can make a payment under protest "within 30 days from the date the Final Notice of Assessment was mailed." That is the deadline, suggesting that the payment under protest must be filed before that deadline.

In addition, TIR 2002-1 "summarizes statutory rights, obligations, and procedures, relating to the audit of net

income, general excise, and use tax returns by the [Department]
which may result in the assessment of additional taxes; appeals
from the assessment of taxes; claims for refund or credit; and
payment to the State under protest."  TIR 2002-1 also provides
that the TIR is issued solely as a guide and is not intended to
be complete.  Like the TBOR, TIR 2002-1 states:

> In lieu of filing an appeal or if an appeal is not filed
> with the board of review or tax appeal court within thirty
> days of the date when the notice of assessment was mailed,
> section 40-35, HRS, allows the taxpayer to pay under
> protest disputed portions of the assessment.  A taxpayer
> may recover those taxes paid under protest if an action for
> recovery is commenced in the tax appeal court within thirty
> days from the date of the payment and the taxpayer prevails
> in that action.  If no suit or proceeding is brought within
> thirty days of the payment, the taxes paid under protest
> become a government realization.

Hence, the NOPA constitutes a "tax assessment," even though
a taxpayer need not make payment until after the final
assessment.  A NOPA qualifies as a "final administrative
decision" required by Grace II to invoke HRS § 40-35
jurisdiction.

**B.   Grace II allows lower courts to determine whether an
       official agency communication is an "adverse ruling"
       constituting a "formal administrative decision" for
       HRS § 40-35 jurisdiction purposes**

In its second issue on certiorari, Hawaiian argues Grace II
allowed lower courts to determine whether an official agency
communication is an "adverse ruling."  This appears to be in
reference to the ICA's statement in its SDO that this court in
Grace II said, "where an administrative decision has not been

formalized, simply arguing that there is a 'dispute' or 'difference of opinion' with [Tax] Department policy and paying taxes under protest does not present an actual dispute under HRS § 40-35." 92 Hawai'i at 612, 994 P.2d at 544. Grace II does, however, allow courts to determine whether there was an "actual dispute." By ruling that a NOPA constitutes a "formal administrative decision" for HRS § 40-35 purposes, we do not intend to preclude other decisions that could also qualify.

**C.    Pursuant to Grace II, the "actual dispute requirement" of HRS § 40-35 is jurisdictional**

In its third question on certiorari, Hawaiian argues that the administrative exhaustion set forth in the language of HRS § 40-35 and in Grace II should be seen as "nonjurisdictional procedural requirements to promote the orderly progress of litigation." We have explained that the distinction between time limit rules that are "claim-processing" and "jurisdictional" are as follows:

> The [U.S.] Supreme Court emphasized that only Congress may determine a lower federal court's subject-matter jurisdiction . . . . [W]hen appeals are not "prosecuted in the manner directed, within the time limited by the acts of Congress, it must be dismissed for want of jurisdiction." As such, the Court stated that the rules regarding time constraints that are derived from statutes specifically limiting a court's jurisdiction are considered "jurisdictional." "Claim-processing" rules related to time restrictions, on the other hand, are "court-promulgated" and adopted by the Court for the orderly transaction of business. Such rules are not derived from statutory time constraints specifically limiting jurisdiction, and can be relaxed at the Court's discretion.
>
> The time constraints in FRAP Rule 4(a)(6) were declared "jurisdictional" because they are set forth by statute in 28

39

U.S.C. § 2107(c), which limits the amount of time federal
district courts can extend the notice of appeal period.

Cabral v. State, 127 Hawai'i 175, 182, 277 P.3d 269, 276 (2012)

(emphasis added).  Hawaiian primarily cites two cases for its

position, Boechler and Aloha Motors.

In Boechler, the U.S. Supreme Court held that the deadline

to petition the tax court for a review of collection due process

determination was not jurisdictional because the underlying

statute did not explicitly so provide, and the Court remanded to

determine whether the plaintiff was entitled to equitable

relief.  596 U.S. at 206, 211.  The Court stated:

> Jurisdictional requirements mark the bounds of a "court's
> adjudicatory authority."  Kontrick v. Ryan, 540 U.S. 443,
> 455 (2004).  Yet not all procedural requirements fit that
> bill.  Many simply instruct "parties [to] take certain
> procedural steps at certain specified times" without
> conditioning a court's authority to hear the case on
> compliance with those steps.  Henderson v. Shinseki, 562
> U.S. 428, 435 (2011). . . . To that end, we treat a
> procedural requirement as jurisdictional only if Congress
> "clearly states" that it is.  Arbaugh v. Y & H Corp., 546
> U.S. 500, 515 (2006).  Congress need not "incant magic
> words," Auburn [Sebelius v. Auburn Regional Medical
> Center], 568 U.S. [145], at 153, but the "traditional tools
> of statutory construction must plainly show that Congress
> imbued a procedural bar with jurisdictional consequences,"
> United States v. Kwai Fun Wong, 575 U.S. 402, 410 (2015).

596 U.S. at 203 (cleaned up).  The Court also rejected the

commissioner's argument related to that case that there was "a

long line of Supreme Court decisions left undisturbed by

Congress" that represented a "clear indication that a

requirement is jurisdictional."  Boechler, 596 U.S. at 208

(cleaned up)(citations omitted).

In Aloha Motors, the taxpayer, Aloha Motors, a franchised motor vehicle dealer, sought a refund of wholesale use taxes it mistakenly paid over several years. 69 Haw. at 516, 750 P.2d at 82. Upon realizing the error, Aloha Motors asked for a refund for tax payments occurring from 1968 to 1981. Id. The tax director agreed to return the payments occurring in 1978 to 1981, but refused to refund more, arguing that Aloha Motors neglected to seek repayment within three years after the payment of the tax as established by HRS § 237-40(d), so those claims were barred. 69 Haw. at 517, 750 P.2d at 83. We concluded that although Aloha Motors was at fault for failing to follow the required steps, the tax appeal court was not divested of jurisdiction to entertain an action contesting the tax director's decision. 69 Haw. at 520, 750 P.2d at 84. Accordingly, because no statutory language supported the Department's position on the tax appeal court's alleged lack of jurisdiction, we held that the tax appeal court possessed the authority to review the merits of that use tax matter. Id. at 520, 750 P.2d at 85. But we also held that there was no discovery tolling for tax statutes and ruled that the statute of limitations in HRS § 237-40(d) barred Aloha Motors' claim. Id.

Aloha Motors does not support Hawaiian's argument that the requirements in HRS § 40-35 are nonjurisdictional, as we ultimately held there was jurisdiction in that case. It further

41

involved a statute of limitation that failed to make explicitly clear any jurisdictional requirements.[15]

Granted, on its face, HRS § 40-35 does not clearly state that it contains a jurisdictional requirement. HRS § 40-35 says that "disputed portions of money" may be paid under protest but does not provide that without such a "dispute" that the tax appeal court would not have jurisdiction, nor does the statute describe when a "dispute" occurs to effectuate the tax appeal court's jurisdiction. Grace I and Grace II, however, discussed the legislative intent behind HRS § 40-35, and Grace II has already decided this issue.

As indicated in Grace I, the "any disputed portion of" language in HRS § 40-35 was added in 1967, evidencing

> the gravamen of a protest payment is not merely a "difference[] of opinion" between the taxpayer and the government, as was said when the statute was first enacted

---

[15]     HRS § 237-40(d) provides:

> (d) Refunds. No credit or refund shall be allowed for any tax imposed by this chapter, unless a claim for such credit or refund shall be filed as follows:
>      (1) If an annual return is timely filed, or is filed within three years after the date prescribed for filing the annual return, then the credit or refund shall be claimed within three years after the date the annual return was filed or the date prescribed for filing the annual return, whichever is later.
>      (2) If an annual return is not filed, or is filed more than three years after the date prescribed for filing the annual return, a claim for credit or refund shall be filed within:
>           (A) Three years after the payment of the tax; or
>           (B) Three years after the date prescribed for the filing of the annual return, whichever is later.

> [in 1907], but some actual dispute which justifies payments to be segregated, and thus removed from governmental use pending judicial resolution of the controversy.

92 Hawaiʻi at 674, 994 P.2d at 606 (Acoba, J., dissenting).

Grace II then sought to effectuate HRS § 632-1's prohibition on declaratory relief actions "in any controversy with respect to taxes." 92 Hawaiʻi at 613, 994 P.2d at 545. We said that "permitting Grace to demand that the Director resolve the question whether Grace is entitled to the refund requested by paying under protest before an audit is completed or any formal decision is made, in effect grants Grace declaratory relief in contravention of HRS § 632-1." Id.

Accordingly, although HRS § 40-35 does not explicitly provide that without a dispute, the tax appeal court is deprived of jurisdiction, Grace II held that the "dispute" requirement set forth in HRS § 40-35 is indeed jurisdictional. Under the doctrine of stare decisis, we see no compelling justification to depart from precedent. See Ahn, 126 Hawaiʻi at 10, 265 P.3d at 479. Therefore, Hawaiian's third question on certiorari lacks merit.

**V.   Conclusion**

For the foregoing reasons, we vacate the tax court's May 16, 2022 (1) Order Granting Defendant Department of Taxation, State of Hawaii's Motion To Dismiss Or, In The Alternative, Cross Motion for Summary Judgment Filed On December 10, 2021;

43

(2) Order Dismissing Plaintiff Hawaiian Airlines, Inc.'s Motion For Summary Judgment Filed on August 10, 2021; and (3) "Final Judgment Re:  Order Granting Defendant Department of Taxation, State of Hawaii's Motion To Dismiss Or, In The Alternative, Cross Motion for Summary Judgment Filed On December 10, 2021," as well as the ICA's April 18, 2024 Judgment on Appeal.  We remand this matter to the tax court for further proceedings consistent with this opinion.


Thomas Yamachika,
for petitioner

Mary Bahng Yokota
(Nathan S.C. Chee,
with her on the briefs),
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

